*551
On Return to Remand 
*

KELLUM, Judge.
The appellant, Brian McCall Snow, was indicted by a Mobile County grand jury for one count of trafficking in methamphetamine, a violation of § 13A.-12~231(ll)a., Ala.Code 1975; one count of unlawful manufacture of a controlled substance in the first degree, a violation of § 13A-12-218, Ala.Code 1975; and one count of arson in the second degree, a violation of § 13A-7-42, Ala.Code 1975. On May 14, 2014, Snow, entered a blind plea of guilt to all three charges for which he was indicted. On June 6, 2014, Snow filed a motion to withdraw his guilty plea in which he argued that he “wasn’t thinking clearly at the time he entered [his guilty] pleas.” (C. 97.) Following a hearing on July 17, 2014, the Mobile Circuit Court denied Snow’s motion to withdraw his guilty plea and sentenced Snow, as a habitual felony offender, to life imprisonment for each conviction. The circuit court ordered that the sentences run concurrently. The circuit court further ordered that Snow pay all mandatory fines, fees, assessments, and court costs.[1] This appeal followed.
. I.
Snow contends that the circuit court erred by sentencing him as a, habitual felony offender because, he argues, his sentence proceedings were governed by the presumptive sentencing standards. Snow contends that the State provided no proof of any aggravating factor that permitted the circuit court to depart from the recommended sentence under the presumptive standards and that' the circuit court failed to state any reasons for its departure from the recommended sentence under the presumptive standards. Snow raises these issues for the first time on appeal. The State argues that the presumptive sentencing standards are not applicable in the instant case' and that Snow’s challenges to the failure of the State to provide proof of any aggravating factor and to the circuit court’s failure to state reasons for its departure from the presumptive standards are not preserved for review on appeal.
At the ■ outset; ■ we must first address whether the presumptive sentencing standards apply under the particular facts of this case.-
The presumptive sentencing standards apply only to those nonviolent offenses included in the “Property A” and “Drug Offense” worksheets. See Presumptive and Voluntary Sentencing Standards Manual 19. The presumptive sentencing standards do not apply to convictions carrying a mandatory sentence of life imprisonment without parole or to sex offenses involving a child victim under 12 years of age. Id. Likewise, the presumptive- standards do not apply to those offenses included in the “Personal Worksheets,” which include offenses such as assault, manslaughter, murder, rape, robbery and sodomy, or the “Property Worksheets,” which include only burglary offenses. See Presumptive and Voluntary Sentencing Standards Manual 53.
When the presumptive sentencing standards apply, sentencing worksheets are presented to the prosecutor, the defendant and/or his attorney, and the sentencing judge before sentencing. Presumptive and Voluntary Sentencing Standards Manual 17. ‘Worksheets must be completed and considered when the ‘most seri *552 ous offense’ at a sentencing event. is a worksheet offense in the same venue.” Presumptive and Voluntary Sentencing Standards Manual. 20. “A sentencing event includes all convictions sentenced at the same time, whether included as counts in one case or in multiple cases, regardless of whether offenses, are worksheet offenses.” Presumptive and Voluntary Sentencing Standards Manual 20 (emphasis in original). Four rules govern the determination of the “most serious offense” at a “sentencing event.” The third of the four rules, and the rule applicable to the instant case, provides: “Where a sentencing event includes both a worksheet offense and a non-worksheet offense and both carry the same statutory maximum penalty as governed by the felony offense classification, the worksheet offense is the most serious offense.”- Presumptive and ' Voluntary Sentencing Standards Manual 20.
Circuit courts are given “significant discretion in arriving at sentencing decisions” under the presumptive standards. Presumptive and Voluntary Sentencing Standards Manual 14. That discretion includes a circuit court’s decision, .“in exceptional cases,” to depart from the dura-tional or dispositional recommendation, or both, “upon a finding of aggravating and/or mitigating factors.” Presumptive and Voluntary Sentencing Standards Manual 24. A circuit court “must consider all aggravating and/or mitigating factors proven for a sentencing event, but the decision to depart from .the presumptive sentence recommendation' is in the discretion of the court.” - Presumptive and Voluntary Sentencing Standards Manual 24. Before a circuit court chooses to depart from a dispositional or dura-tional . recommendation under the presumptive sentencing standards, certain procedures must be followed, among them that the prosecutor must prove beyond a reasonable doubt that an aggravating factor exists. Id. The presumptive standards also provide that “[t]he defendant is entitled to a jury trial on the existence of any aggravating factor, unless the aggravating factor is admitted by the defendant or both the defendant and the prosecutor waive a jury determination and request the judge alone to decide.” Id.
In the instant'case, Snow was indicted for, and pleaded guilty to, trafficking in “28 grams or more but less than 500 grams” of methamphetamine, a violation of § 13A-12-281(ll)a., AláCode 1975; unlawful manufacture of a controlled substance in the first degree, a violation of § 13A-12-218, Ala.Code 1975; and arson in the second degree, a violation of § 13A-7-42, Ala.Code 1975. Both the trafficking and manufacturing convictions are Class A felonies, see' §§ 13A-12-231(12) and punishable by imprisonment “for life or not' more than 99 years or less than 10 years.” § 13A-5-6(a)(l), Ala.Code 1975. Arson in the second degree is a Class B felony. See § 13A-7-42(e), Ala.Code 1975. Following his- guilty plea, the circuit court conducted a sentencing hearing, and imposed a.sentence for each of the convictions.
One of the three convictions for which Snow was sentenced — unlawful manufacture of a- controlled substance in the first degree — is a presumptive-standards offense listed under the “Drug Worksheets.” Presumptive and Volunta/ry Sentencing Standards Manual 19. Because Snow was convicted of manufacturing methamphetamine — a worksheet offense — and trafficking in methamphetamine — a non-worksheet offense — and both are Class A felonies, Snow’s conviction for manufacturing methamphetamine controlled for purposes of determining the application of the presumptive sentencing.standards.[2]
*553 The State argues on appeal that the manufacturing and trafficking offenses in this case do not carry the same statutory maximum penalty as provided by the felony offense classification. Indeed, the State contends that Snow’s trafficking conviction is the “most serious offense” because “[ujnder the trafficking statute’s internal sentencing provisions, the maximum penalty for trafficking in methamphetamine is life without parole. See Ala.Code § 13A-12-231(ll)d.” (State’s brief, p. 12.) We disagree.
In this case, Snow was indicted for, and pleaded guilty to, trafficking in “28 grams or. more but less than 500 grams” of meth-amphetamine in violation of § 13A-12-231(ll)a. While it is. true that under § 13A-12-231(ll)d. a defendant who is found guilty of trafficking 10 kilos or more of methamphetamine “shall be sentenced to a mandatory term of life imprisonment without the possibility of parole,” it is undisputed that Snow was convicted under § 13A-12-231(ll)a. — a Class A felony. Therefore, the maximum penalty under the law that he could have received was “life or not more than 99 years or less than 10 years” and not life imprisonment without the possibility of parole. See § 13A-5-6(a)(l), Ala.Code 1975. Accordingly, the presumptive sentencing standards were applicable in this case.
In light of our holding that the presumptive sentencing standards apply in this case, we must now determine whether the circuit court considered the presumptive sentencing standards and, if the court did consider the standards, whether Snow waived any procedural defects in the circuit court’s consideration of those standards.
The record indicates that before Snow pleaded guilty the State filed a “Notice to Proceed under the Habitual Felony Offender Act” and a “Notice of Intent to Prove Aggravating Factors.” Regarding the aggravating factors, the State alleged that “[t]he crime involved multiple participants in the criminaL conduct, and the defendant played a major role in the crime as the meth cook” and that “[t]he commission of the offense created a substantial risk to human health and safety or a danger to the environment.” (C. 91.)[3] During the guilty-plea colloquy, the following exchange occurred:
“THE COURT: Are you pleading guilty to trafficking in methamphetamine, manufacturing methamphetamine first degree, and arson in the second degree because you are guilty of those charges?
“THE DEFENDANT: Yes, sir.
“THE COURT: All right. Before we go further, I think I need to double check., It looks like Mr. Snow is pleading guilty to an aggravating factor in the guidelines offenses?
“[PROSECUTOR]: That is correct, Judge, that factor being that his actions caused a great danger to health -and human safety.
“[DEFENSE COUNSEL]: Judge, the State has alleged that.
“THE COURT: Okay.- You understand that at the trial the State would *554 have to prove beyond a reasonable doubt that your actions in the trafficking, manufacturing, and arson cases constituted a great danger to health and human safety-
“[DEFENSE COUNSEL]: And, Judge, we will reserve all mitigation to sentencing hearing.
“THE COURT: Okay. And, again, you understand the State would have to prove that also beyond a reasonable doubt?
“THE DEFENDANT: Yes, sir.
“THE COURT: What would the State expect the evidence to be in these cases?
“[PROSECUTOR]: The State would expect the evidence to show that on or about May the 18th of 2012, deputies responded to a location in Mobile County in reference to a possible meth lab.
“As they approached the back shed several people exited the back shed, including Mr. Snow. Upon seeing deputies a number of the people turned around and said, ‘bum it, burn it.’ Mr. Snow turned around and began fiddling with what was later discovered to be a meth lab, which went up in flames.
“The shed caught on fire. They had to bring in the fire extinguishers in order to put it out. It did damage the building.
“They were able to recover the one-shot meth lab that he had been working on as well as some finished methamphetamine product. The lab was within 500 feet of a house.
“About six months later Mr. Snow was arrested on an unrelated methamphetamine case and when asked where the lab was, he told deputies in that case, T have not cooked since you all caught me cooking back in may at Joe Lott’s place,’ which would be referenced in this case when he was arrested. All of this occurred in Mobile County.
[[Image here]]
“THE COURT: The Court finds the pleas in these cases are entered voluntarily, intelligently, and knowingly. The Court accepts the pleas of guilty and adjudges the defendant Brian Snow to be guilty of trafficking in methamphetamine, the unlawful manufacture of methamphetamine in the first degree, and arson in the second degree with the aggravated factor of great danger to health and human safety.”
(R. 7-9.)
At the sentencing hearing, the prosecutor referenced a “myriad of [sentencing] options” before the circuit court, stating: “It could be a guidelines offense. If you take it out of the guidelines due to the aggravating factor he stipulated to, the only options are life or [life imprisonment without the possibility of parole].” (R. 33.) Snow did not present evidence of any mitigating factors at sentencing. In pronouncing its sentence, the circuit court departed from the guidelines and sentenced Snow to concurrent terms of life imprisonment for each conviction.
“The Alabama Sentencing Reform Act of 2003 (‘the Act’), as amended effective October 1, 2006, created voluntary sentencing standards to, among other things, assist trial judges in determining the most appropriate sentence for convicted felony offenders. See § 12-25-31(a)(1), Ala.Code 1975. At the time the Act was passed, a trial judge had the discretion to sentence a defendant either pursuant to the voluntary sentencing standards or pursuant to the [Habitual Felony Offender Act]. See State v. Crittenden, 17 So.3d 253, 259 (Ala.Crim.App.2009).
“In 2012, the legislature enacted § 12-25-34.2, Ala.Code 1975, effective *555 May 15, 2012, to implement presumptive sentencing standards in place of the voluntary sentencing standards. See Act No. 2012-473, Ala. Acts 2012. Section 12-25-34.2(b), Ala.Code 1975, provides:
“ ‘The voluntary sentencing standards as provided for in Section 12-25-34, as applied to nonviolent offenses shall become presumptive sentencing standards effective October 1, 2013, to the extent the modification adopted by the Alabama Sentencing Commission become effective October 1, 2013. The standards shall be applied by the courts in sentencing subject to departures as provided herein. To accomplish this purpose as to the existing initial voluntary sentencing standards, the Alabama Sentencing Commission shall adopt modifications to the standards, worksheets, and instructions to the extent necessary to implement this provision including, but not limited to, defining aggravating and mitigating factors that allow for departure from the presumptive sentencing recommendations. The commission’s modifications shall be presented to the Legislature in the commission’s annual report within the first five legislative days of the 2013 Regular Session.’ ”
Clark v. State, 166 So.3d 147, 149 (Ala.Crim.App.2014).
The record indicates that the circuit court considered the presumptive sentencing standards before it entered a sentence departing from those standards. The record further indicates that Snow did not object to the circuit court’s departure from the presumptive standards on the basis that the State provided no proof of any aggravating factor or on the basis that the circuit court failed to state any reasons for its departure from the recommended sentence under the presumptive standards.
The rules of preservation are well settled. “‘Review on appeal is restricted to questions and issues properly and timely raised at trial.’ ” Ex parte Coulliette, 857 So.2d 793, 794 (Ala.2003)(citing Newsome v. State, 570 So.2d 703, 717 (Ala.Crim.App.1989)). “‘An issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented.’ ” Id. at 794 (citing Pate v. State, 601 So.2d 210, 213 (Ala.Crim.App.1992)). “[T]o preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof.” McKinney v. State, 654 So.2d 95, 99 (Ala.Crim.App.1995) (citation omitted).
Snow’s challenges to defects in the circuit court’s consideration of the presumptive sentencing standards are waivable and were, in fact, waived when Snow failed to object to those defects in the circuit court and thereby preserve his arguments for review on appeal. Compare Clark v. State, 166 So.3d 147 (Ala.Crim.App.2014) (holding presumptive sentencing standards applied retroactively where defendant objected at sentencing hearing on the basis that the presumptive sentencing standards applied to his case); Hyde v. State, 185 So.3d 501 (Ala.Crim.App.2015)(holding circuit court’s decision to depart from the presumptive sentencing recommendation and impose a prison sentence was reversible error where defendant objected on the basis that the State failed to give notice of aggravating factors that would justify a dispositional departure from the presumptive sentencing recommendation and the trial court failed to state on the record a reason for its departure). Because Snow did not raise the challenges to the circuit court’s departure from the presumptive sentencing standards below that he now *556 raises on appeal, Snow’s claims are not preserved for appellate review. '
II.
Snow also contends that the- circuit court erred when it 'denied his motion to withdraw his guilty plea. Specifically, Snow contends that he did not, knowingly, intelligently, or voluntarily enter his guilty plea because, he argués, the circuit court did not inform him whether he was being sentenced under the presumptive guidelines or as a habitual offender and that, therefore, he was, misinformed regarding the possible range of his sentence. Snow raises this issue for the first time on appeal.
“An issue raised on an appeal from a guilty plea must be preserved by an objection, a motion to withdraw the plea, or a motion for a new trial.” Cochran v. State, 808 So.2d 1226, 1227 (Ala.Crim.App.2000). “Review on appeal is limited to review of -questions properly and timely raised at trial.” Newsome v. State, 570 So.2d 703, 716 (Ala.Crim.App.1989). Although Snow moved to withdraw his guilty plea, he did so on the basis that he was not “thinking clearly at the time he entered [his] pleas.” (C. 97.) Because Snow argues for the first time on appeal that he did not knowingly, intelligently, and voluntarily plead guilty on-the basis of misinformation regarding his sentence, Snow’s claim is not preserved for appellate review.
Based on 'the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
WINDOM, P.J., and WELCH, BURKE, and JOINER, JJ., concur.

 Note from the reporter of decisions: On January 8, 2015, this case was remanded by order.

. Although the circuit court initially failed to assess all mandatory fines and assessments, on January 8, 2015, this Court remanded Snow’s case by order for the circuit court to impose those fines and assessments.

. Because Snow's conviction for arson in the second degree is a Class B felony, it is not *553 considered in determining the "most serious offense” for purposes of applying the presumptive sentencing standards.

. The Presumptive and Voluntary Sentencing Standards Manual 26 lists several aggravating factors that include, among other things, consideration of whether the “crime involved multiple participants in criminal conduct, and the defendant played a major role in the crime as the leader, organizer, recruiter, manager, of supervisor” and thé “commission- of the offense- created a substantial risk to*human health or safety or a danger to the environment.”